## In re BLUE MOUNTAIN INVESTMENTS, LTD.

### BLUE MOUNTAIN INVESTMENTS, LTD., Plaintiff/Appellant,

v.

### William G. BONE and Sunrise Company, Defendants/Appellees.

Civ. A. No. 93–4205–DES.
Bankr. No. 86–41407–7C.
Adv. No. 87–0159.

United States District Court,
D. Kansas.

Aug. 18, 1995.

---

Michael J. Friesen, Friesen & Wendler, P.A., Garden City, KS, for Blue Mountain Investments, Ltd..

William B. Sorensen, Jr., Morris, Laing, Evans, Brock & Kennedy, Chtd., Wichita, KS, for appellees William G. Bone, Sunrise Company.

## MEMORANDUM AND ORDER

SAFFELS, Senior District Judge.

This matter is before the court on the appeal taken by the debtor, Blue Mountain Investments, Ltd. (Blue Mountain), from the order of the bankruptcy court filed on September 2, 1993, dismissing with prejudice count 1 of the debtor's complaint of October

1, 1987. Count 1 of the complaint alleges that defendants, William H. Bone and Sunrise Company (Sunrise), fraudulently induced Blue Mountain to believe that Sunrise would purchase Blue Mountain's interest in a deed of trust held by Blue Mountain. The bankruptcy court had previously granted the defendants' motion for summary judgment as to count 2 of the debtor's complaint, the debtor's only other claim, on April 27, 1988. Count 2 alleges that Blue Mountain holds title to a 420–acre tract of land situated in or near Palm Desert in Riverside County, California. The bankruptcy court's order of September 2, 1993, made the summary judgment on count 2 a final decision, and thereby resolved both counts of the debtor's complaint.

## I.  BACKGROUND

Most of the relevant facts underlying this dispute have previously been set forth in the bankruptcy court's Order Granting Partial Summary Judgment, No. 86–41407–11, Adversary No. 87–0159 (Bankr.D.Kan. Apr. 27, 1988). At the time Blue Mountain filed its chapter 11 bankruptcy proceeding in October 1986, the debtor held as an asset a deed of trust, given in consideration for a $165,000 loan made to individuals by the name of Shamblin. The Shamblins, who themselves had filed a chapter 11 bankruptcy in 1982, gave the deed of trust upon a 420–acre tract they owned in Riverside County, California (420–acre tract). The Shamblins fell into arrears on Blue Mountain's deed of trust, and on June 6, 1986, the United States Bankruptcy Court for the Central District of California lifted the automatic stay of 11 U.S.C. § 362(a) to allow Blue Mountain to foreclose.

On December 11, 1986, the United States Bankruptcy Court for the District of Kansas granted the Shamblins partial stay relief. The Kansas bankruptcy court's order permitted the Shamblins to file a motion before the California bankruptcy court, seeking reimposition of the automatic stay of Blue Mountain's imminent foreclosure of its deed of trust. The purpose of the partial relief was to allow the Shamblins to convince the California bankruptcy court that they had financing available to pay their deed of trust creditors. Should the California court determine that the Shamblins had available such financing, the court would reimpose the automatic stay; on the other hand, if the Shamblins did not have available financing sufficient to pay their deed of trust creditors, the California court would not reimpose the stay.

The Shamblins presented their motion to the California court on February 20, 1987. Initially, the court was not convinced that financing was presently available to the Shamblins, and thus denied them relief from Blue Mountain's scheduled foreclosure. Upon reconvening the hearing later that day, however, the court found that the Shamblins had an offer of purchase on their 420–acre tract sufficient to pay their creditors' deeds of trust. The California court reimposed the stay against Blue Mountain, on the condition that Blue Mountain be paid in full for its trust deed later that day. The court's order specifically provided that Sunrise would make the tender to Blue Mountain on behalf of the Shamblins. Should the money not be made available to Blue Mountain that day, Blue Mountain would be allowed to foreclose on February 23, 1987.

Phillip Smith, Executive Vice President of Sunrise, tendered a check in the amount of $199,069.50, a sum sufficient to satisfy Blue Mountain's claim in the Shamblin bankruptcy proceeding, to Michael Friesen, counsel for Blue Mountain, on February 20, 1987. Mr. Friesen refused the tender.

On February 23, 1987, Blue Mountain foreclosed upon its deed of trust. Later that day, the California court issued an order declaring the foreclosure sale to be void. The court found that Blue Mountain had been tendered the full amount owing on its trust deed, and that the foreclosure sale had therefore been stayed by the court's February 20, 1987 order. On February 26, 1987, the Shamblins executed a grant deed of their 420–acre tract to William Bone of Sunrise. On July 10, 1987, the Shamblins' chapter 11 proceeding was dismissed. On July 5, 1990, the Kansas bankruptcy court converted Blue Mountain's bankruptcy case from a chapter 11 reorganization to a chapter 7 liquidation.

512

## II. DISCUSSION

▮▮▮ 28 U.S.C. § 158(a) grants the court jurisdiction to hear appeals from final orders of the bankruptcy court. The court reviews de novo the bankruptcy court's conclusions of law. *Schneider v. Nazar (In re Schneider)*, 864 F.2d 683, 685 (10th Cir.1988). The court examines the bankruptcy court's findings of fact, however, under the "clearly erroneous" standard. *Id.* at 685.

### A. Standing to Appeal

▮▮ Before the court can address the issues raised by Blue Mountain in its brief, it is necessary to examine defendants' claim that Blue Mountain lacks standing to appeal from the bankruptcy court's dismissal of this adversary proceeding. Defendants argue under 11 U.S.C. § 323 and Bankruptcy Rule 6009 that once the debtor's case was converted to chapter 7, the trustee replaced the debtor as exclusive representative of the bankruptcy estate. Sunrise contends that because the bankruptcy court dismissed this adversary proceeding after Blue Mountain's conversion to chapter 7, Blue Mountain was no longer a party to the action at the time it filed its notice of appeal. As a non-party, the argument continues, Blue Mountain lacks standing to appeal the order of the bankruptcy court because it failed to formally intervene in the adversary proceeding under Fed. R.Civ.P. 24.

Sunrise cites two cases in support of its proposition that absent formal intervention, a chapter 7 debtor lacks standing to appeal an order of the bankruptcy court. In *Stainer v. Latimer (In re Latimer)*, 918 F.2d 136 (10th Cir.1990), *cert. denied*, 502 U.S. 863, 112 S.Ct. 186, 116 L.Ed.2d 147 (1991), the court held that because the chapter 7 debtor failed to intervene, the debtor lacked standing to participate in the adversary proceeding. *Id.* at 137. Similarly, in *Kowal v. Malkemus (In re Thompson)*, 965 F.2d 1136 (1st Cir.1992), the court held that a chapter 7 debtor who was not a party to the adversary proceeding lacked appellate standing to challenge a bankruptcy court order. *Id.* at 1148.

*Latimer* and *Thompson,* however, are distinguishable from the case at hand. The adversary proceeding in *Latimer* was com- menced by the trustee, not the debtor as in this case. *Latimer,* 918 F.2d at 137. Blue Mountain, as a chapter 11 debtor-in-possession, was a proper party at the time it instituted this adversary proceeding on October 1, 1987. Unlike Blue Mountain, the debtor in *Latimer* was a chapter 7 debtor throughout the adversary proceeding, and thus was never a party. Similarly, the adversary proceeding in *Thompson* was initiated by a third party, not the debtor. *Thompson,* 965 F.2d at 1139. Defendants do not cite, nor has the court discovered, any case in which a chapter 11 debtor who commenced an adversary proceeding is later denied standing to appeal the outcome of that case because the debtor failed to formally intervene following a conversion of the case to chapter 7.

▮▮▮ Furthermore, courts have held that a person aggrieved by a bankruptcy ruling has a general right to appeal and need not formally intervene. *See, e.g., International Trade Admin. v. Rensselaer Polytechnic Inst.,* 936 F.2d 744, 748 (2d Cir.1991). The Tenth Circuit has adopted the "person aggrieved" test to determine whether a party has standing to appeal a bankruptcy court's decision. *Weston v. Mann (In re Weston),* 18 F.3d 860, 863 (10th Cir.1994). A chapter 7 debtor is normally not a person aggrieved by a bankruptcy court's order, in that such a debtor is typically insolvent, and thus has no financial stake in the distribution of payments from its liquidated estate. On the other hand, if an estate is solvent and any excess will eventually go to the debtor, a chapter 7 debtor may be a party aggrieved by an order of the bankruptcy court. *Id.* at 863–64. Because Blue Mountain is at least potentially solvent, the court finds that it is a party aggrieved with standing to appeal the bankruptcy court's order.

Blue Mountain frames the issues on appeal as follows: "I. Whether the court erred in finding that Blue Mountain's literal interpretation of 11 U.S.C. § [349(b)(1)(B) ] was correct but that Congress did not intend it to be read literally; and II. Whether the court erred in dismissing both counts of Blue Mountain's cause of action without evidence and based upon hearsay allegations by coun-

sel for the U.S. Trustee, or refusal to grant debtor's request for abandonment of the subject action to the debtor and its creditors." The debtor also attacks on several different grounds the validity of the California court's order reimposing the § 362(a) stay.

## B. *Validity of California court's orders*

Section 349(b), entitled "Effect of dismissal," provides that "[u]nless the court, for cause, orders otherwise, a dismissal of a case other than under section 742 of this title— ... (2) vacates any order, judgment, or transfer ordered, under section 522(i)(1), 542, 550, or 553 of this title; and (3) revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title." Blue Mountain argues that because the Shamblins' bankruptcy proceeding was dismissed on July 10, 1987, the California court's orders reinstating the § 362(a) stay and declaring Blue Mountain's foreclosure sale to be void are moot and without effect.

■ Section 349 does not operate to vacate either of the California court's orders. By its terms, § 349(b)(2) vacates only orders entered under §§ 522(i)(1), 542, 550, and 553. The court's February 20, 1987, order reinstating the automatic stay was entered under § 362(a). As for the February 23, 1987, order declaring Blue Mountain's foreclosure sale to be void, the court did not specify which section of the bankruptcy code it used in entering its judgment. Blue Mountain maintains that the court utilized § 549, while the defendants contend that the court used § 362(a). In either case, § 349(b)(2) does not apply.

Nor can the debtor avail itself of § 349(b)(3), which revests property in the entity in which such property was vested before the commencement of the bankruptcy case. Clearly, the Shamblins owned the 420–acre tract at the time they commenced their bankruptcy proceeding in 1982. Blue Mountain concedes in its brief in support of its appeal that the effect of § 349(b)(3) would be to revest title to the 420–acre tract in the Shamblins.

Alternatively, Blue Mountain maintains that the California court was without authority to reinstate the § 362(a) stay, in that Blue Mountain did not receive a proper tender of the money owed it under the trust deed.

■ The California court made its reinstatement of the § 362(a) stay contingent on Sunrise tendering a check to Blue Mountain for the full amount owed under the trust deed. Blue Mountain maintains that the only party who could tender payment was the Shamblins, the debtors on the underlying note. According to Blue Mountain, any tender by Sunrise constituted an offer to purchase rather than a tender of the indebtedness on the trust deed. The debtor argues that its trust deed was worth more than the amount owing on it, and that it should not have been required to "sell" the trust deed to Sunrise for the amount of the indebtedness.

Blue Mountain's argument is without merit. The California court made clear at the February 20, 1987, hearing that tender would be made by Sunrise on behalf of the Shamblins. The funds tendered by Sunrise were part of a loan to the Shamblins made in connection with the prospective sale to Sunrise of the 420–acre tract. Tender of a check in the amount of $199,069.50, undisputedly the full amount owing under the deed of trust, constituted payment in full of Blue Mountain's trust deed.

■ Blue Mountain contends, however, that it was not actually tendered a check by Sunrise, but rather that Sunrise's representative presented Blue Mountain with a copy of a check. The transcript of the hearing which reconvened following Blue Mountain's meeting with Sunrise indicates otherwise. The California court was satisfied that Phillip Smith of Sunrise had in his possession a cashier's check for $199,069.50 when he met with Blue Mountain's counsel, and that he had the check with him when the hearing reconvened. Van Voohris, title officer for Chicago Title, apparently provided Michael Friesen, Blue Mountain's attorney, with a copy of the check for Mr. Friesen to examine, at which point Mr. Friesen indicated that he could not accept the check. This court agrees with the California and Kansas bankruptcy courts that under these circum-

stances, Sunrise made a proper tender of the check.

■ Having been offered full payment on its trust deed, Blue Mountain lost its right to foreclose. Cal.Civ.Code § 2924c provides that upon payment of "the entire amount due [of an obligation under a trust deed], ... all proceedings theretofore had or instituted shall be dismissed or discontinued...." Section 2924g provides that "[t]he trustee shall postpone the [foreclosure] sale upon the order of any court of competent jurisdiction...." The California court properly stayed Blue Mountain's foreclosure upon tender to Blue Mountain of the entire amount due under its trust deed.

Finally, the debtor claims that the California court's order reinstating the § 362(a) stay was void for lack of due process. First, Blue Mountain alleges that it "was present (with no notice) at one 'hearing' but not present at any other hearing" before the California court on February 20, 1987. Second, Blue Mountain asserts that improper communications took place between the California bankruptcy judge and the Kansas bankruptcy judge.

■ As to Blue Mountain's first claim, the Kansas bankruptcy court found that the February 20th hearing was properly noticed, and that the hearing which reconvened immediately afterwards was a logical extension of the first hearing. At the second phase of the hearing, the California court ordered that the § 362(a) stay be reimposed on the condition that a check be made available to Mr. Friesen later that day. Following a meeting between Sunrise and Blue Mountain, Sunrise went back to court to inform the judge that its tender had been refused. This third phase of the hearing was the only portion of the hearing at which Blue Mountain was not present.

The transcript of the February 20th hearing indicates that Blue Mountain was present and represented by counsel at all proceedings prior to the time at which the California court announced its order conditionally reimposing the stay. This court therefore agrees with the Kansas bankruptcy court's finding that any deficiency in procedure did not rise

to such a level as to vitiate the California court's order.

■ This court finds Blue Mountain's allegation concerning improper communications between the California and Kansas bankruptcy courts to be similarly unfounded. At the third phase of the February 20th hearing, Judge Naugle of the California court indicated that subsequent to the second phase of the hearing, he had "had the advantage of discussing the matter with Judge Pusateri in Kansas to ensure that he did not feel that his jurisdiction was being unnecessarily infringed upon...." Judge Naugle's conversation with Judge Pusateri was apparently in response to Blue Mountain's expressed concern as to "what the Kansas Court is going to require" in light of its December 11, 1986, Order of Partial Stay Relief, *In re Blue Mountain Investments, Ltd.*, No. 86–41407 (Bankr.D.Kan. Dec. 11, 1986). This court disagrees with Blue Mountain's characterization of this contact as "ex parte communication ... to make certain finding of fact and conclusions of law."

### C. *Application of collateral estoppel to California court's orders*

Collateral estoppel bars a claim if four requirements are met:

(1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party or in privity with a party to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

*Maes v. Thomas*, 46 F.3d 979 (10th Cir. 1995), *cert. denied*, —— U.S. ——, 115 S.Ct. 1972, 131 L.Ed.2d 861 (1995) (quoting *In re Lombard*, 739 F.2d 499, 502 (10th Cir.1984)).

■ The elements of collateral estoppel are met as to the issue of Blue Mountain's right to foreclose on the 420–acre tract. The issue was finally adjudicated on its merits by the California court on February 20, 1987. Blue Mountain appeared through its attorney at the February 20th hearing. Finally, hav-

ing determined that the debtor was not denied due process at the hearing, we must conclude that Blue Mountain had a full and fair opportunity to litigate the issue at that time.

For the foregoing reasons, we conclude that the California court properly reinstated the § 362(a) stay as to Blue Mountain, and that the Kansas bankruptcy court was correct to follow the California court's orders.

### D. *Applicability of 11 U.S.C. § 349(b)(1)(B)*

We now turn to Blue Mountain's argument that § 349(b)(1)(B) nonetheless operates to reinstate its purchase of the 420–acre tract at the foreclosure sale. Section 349(b)(1)(B) provides that "[u]nless the court, for cause, orders otherwise, a dismissal of a case other than under section 742 of this title—(1) reinstates— ... (B) any transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this title...." Section 549(a) provides that "the trustee may avoid a transfer of property of the estate—(1) that occurs after the commencement of the case; and ... (2)(B) that is not authorized under this title or by the court." Blue Mountain claims that the California court utilized § 549 in voiding the debtor's February 23, 1987 foreclosure sale, and that § 349(b)(1)(B) therefore applies.

In its February 20, 1987, order, the California bankruptcy court reinstated the automatic stay of § 362(a) "to prevent Blue Mountain from causing to be conducted a trustee's sale of the [420–acre tract.]" After Blue Mountain proceeded with the foreclosure sale on February 23, 1987, the California court issued a second order. The court stated that "having ordered that Blue Mountain's foreclosure sale was stayed, the foreclosure sale conducted on February 23, 1987 by Michael J. Friesen on behalf of Blue Mountain Investments, Ltd. is declared to be void...."

Though the Kansas bankruptcy court found it "unlikely that the California court relied on § 549," the Kansas court noted that the California court did not indicate whether it used § 549 or § 362(a) to invalidate Blue Mountain's foreclosure. The debtor hangs its hat on the Kansas court's statement that if the California court had used § 549, the "literal effect [of § 349(b)(1)(B) ] would be to reinstate the foreclosed sale and Blue Mountain's deed in the property." Upon an examination of the legislative history of § 349, however, the Kansas court concluded that § 349 was not applicable.

This court agrees with the Kansas bankruptcy court's holding that § 349 does not operate to vest title to the 420–acre tract in Blue Mountain. In its order voiding the foreclosure sale, the California court referred to its previous order which had stayed the sale pursuant to § 362(a). One can infer, therefore, that the California court utilized § 362(a) to void the foreclosure. As the Kansas bankruptcy court observed, "[i]f the [California] court used § 362, § 349 by its terms would not apply."

The Tenth Circuit has consistently held that actions taken in violation of a § 362(a) stay are void and without effect. *See, e.g., Franklin Sav. Ass'n v. Office of Thrift Supervision*, 31 F.3d 1020, 1022 (10th Cir.1994); *Valley Transit Mix of Ruidoso, Inc. v. Miller*, 928 F.2d 354, 356 n. 3 (10th Cir.1991); *In re Calder*, 907 F.2d 953 (10th Cir.1990); *Ellis v. Consolidated Diesel Elec. Corp.*, 894 F.2d 371, 372 (10th Cir.1990). In *Meyer v. Rowen*, 181 F.2d 715 (10th Cir.1950), the court specifically found that a foreclosure sale conducted in violation of 11 U.S.C. § 828, the predecessor of § 362(a), was void.

*Schwartz v. United States (In re Schwartz)*, 954 F.2d 569 (9th Cir.1992), presents a detailed analysis of the distinction between transactions avoidable under § 549, and transfers in violation of § 362(a), which are void ab initio. The court in *Schwartz* held that § 549 applies to transfers of property which are not voided by § 362(a). *Id.* at 574. Therefore, if Blue Mountain's foreclosure was rendered void by § 362(a), as the law in both the Ninth and Tenth Circuits would require, the California court could not have relied on § 549 when it declared the foreclosure sale to be void.

Blue Mountain's other argument in support of its contention that it is entitled to relief under 11 U.S.C. § 349(b)(1)(B) can be

dispensed with in short order. The debtor references the transcript of the April 3, 1987 hearing on the Shamblins' motion to dismiss their chapter 11 proceeding. Sunrise requested that the California court include in its order dismissing the case a finding that the terms of the sale of the 420–acre tract to Sunrise were disclosed to the court and to interested parties, and that the sale was conducted pursuant to those terms and pursuant to prior order of the court. Blue Mountain argues that the court's refusal to make such a finding constitutes a determination by the court that the "sale of the [420–acre tract] to Sunrise was subject to the far reaching scope of Section 349(b)."

This court finds no basis to conclude that the California court's refusal to make the finding requested by Sunrise represents a determination of the applicability of § 349 to the debtor's foreclosure. The California court could have refused Sunrise's request for any number of reasons, which this court finds it unnecessary to delve into.

### E.   *Trustee's failure to abandon action*

Finally, Blue Mountain argues that the trustee has breached its fiduciary duty to the estate and its creditors. Specifically, the debtor claims that the trustee breached his duty by requesting that the claims in the debtor's complaint be dismissed with prejudice, rather than abandoned to the debtor. Blue Mountain cites *In re K.C. Mach & Tool, Co.,* 816 F.2d 238, 247 (6th Cir.1987) (quoting *Knapp v. Seligson (In re Ira Haupt & Co.),* 398 F.2d 607, 612–13 (2d Cir.1968)) for the proposition that "a trustee is under no duty to retain the title to a piece of property or a cause of action that ... does not promise any benefit to the funds available for distribution."

11 U.S.C. § 554(a) provides that "[a]fter notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." Section 554(b) provides that "[o]n request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate."

As for count 2 of the complaint, the trustee did not request dismissal of that claim. Rather, the Kansas bankruptcy court granted the defendants' motion for summary judgment on count 2, and the trustee indicated that he would not appeal the court's ruling. Because summary judgment has already been granted as to the count 2 claim, that claim cannot now be abandoned to the debtor.

As for count 1 of the complaint, the court agrees with the debtor that a trustee "has the capacity to prosecute a lawsuit on behalf of the estate, and ... the duty to administer the estate 'impartially for the good of each and all of the creditors.'" *Wissman v. Pittsburgh Nat'l Bank,* 942 F.2d 867, 870 (4th Cir.1991) (quoting *In re Oliveri,* 45 F.Supp. 32, 33 (E.D.N.Y.1942)). On the other hand, a trustee is not "obligated to pursue every cause of action." *Jefferson v. Mississippi Gulf Coast YMCA, Inc.,* 73 B.R. 179, 182 (S.D.Miss.1986). In *Jefferson,* the court found that the evidence of record supported the trustee's decision not to join in the debtor's suit to set aside a foreclosure sale. *Id.* at 182.

The plaintiff has the burden of proving its claim, and that burden remains on Blue Mountain until the termination of the action. *See Pacific Portland Cement Co. v. Food Mach. & Chem. Corp.,* 178 F.2d 541, 547 (9th Cir.1949). Blue Mountain fails in its brief on appeal, however, to advance any arguments as to the merits of its fraudulent inducement claim. The Kansas bankruptcy court found that the trustee had made a reasonable investigation and reached reasonable conclusions regarding the claim's viability. This court will not set aside the bankruptcy court's finding absent a showing by the debtor that the finding was clearly erroneous.

Having determined that the trustee exercised reasonable judgment in not pursuing Blue Mountain's fraudulent inducement claim, we now turn to the debtor's contention that the trustee nevertheless should have

abandoned the claim to the debtor rather than seek a dismissal with prejudice.

 Jurisdiction over property in a bankruptcy case lapses when the property leaves the estate. *Elscint, Inc. v. First Wisc. Fin. Corp. (In re Xonics, Inc.)*, 813 F.2d 127, 131 (7th Cir.1987). "[I]t is the relation of dispute to estate, and not of party to estate, that establishes jurisdiction.... Sometimes the practical effect of abandonment is to fold up the bankruptcy case, to remit claimants to the 'abandoned' assets to whatever remedies they have at state law." *Id.* at 131–32. *See also Huennekens v. Walker (In re Southern Int'l Co.)*, 165 B.R. 815, 819 (Bankr.E.D.Va. 1994) (claims relating to abandoned property have "no bearing on the administration of the debtor's Chapter 7 case and must be dismissed"); *Brateman Bros., Inc. v. Brateman (In re Brateman Bros., Inc.)*, 135 B.R. 853, 856 (Bankr.N.D.Ind.1991) (upon abandonment of litigation as an asset of the estate, court loses jurisdiction, thus requiring either dismissal or remand to state court); *Anderson v. Chester Housing Auth. (In re Anderson)*, 129 B.R. 44, 49 (Bankr.E.D.Pa. 1991) (abandonment of property generally deprives court of jurisdiction regarding disputes about the property).

 If the court were to grant Blue Mountain's request to order the trustee to abandon the debtor's count 1 claim to the debtor, the court would be obliged to then dismiss the claim for lack of subject matter jurisdiction. We have no indication that this is the result actually intended by the debtor. We therefore deny the debtor's request to order the trustee to abandon the count 1 claim.

**IT IS BY THE COURT THEREFORE ORDERED** that the order of the bankruptcy court entered April 26, 1988, granting defendants summary judgment on count 2 of the plaintiff's complaint, is hereby affirmed.

**IT IS FURTHER ORDERED** that the order of the bankruptcy court entered September 2, 1993, granting the trustee's motion to conclude this adversary proceeding, and dismissing with prejudice count 1 of the plaintiff's complaint, is hereby affirmed.